## Woodruff, Appellant, v. Painter & Eldridge.

[Marked to be reported.]

### Liability of shop-keeper to customer—Implied contract.

A shop-keeper by opening his store invites the public to come there for the transaction of business in the usual way, and from this invitation there arises an implied contract that no harm or damage that could reasonably be averted shall happen to the persons of those so coming or to such property as they necessarily or habitually, in pursuance of a universal custom, carry with them; and the consideration for such promise is the chance of profit from their patronage.

### Custody of property—Authority of salesman.

Whatever a customer necessarily or, in common with people generally, habitually carries with him, and must necessarily lay aside in the store while making or examining his purchases, he is invited to lay aside by the invitation to come and purchase; and, having laid it aside upon such invitation and with the knowledge of the dealer, he has committed it to his custody.  And this being a necessary incident of the business upon which the customer was invited to come to the store, the care of the property would be within the authority of the salesman assigned to wait upon the customer; it would be part of the transaction in which the salesman is authorized to represent his employer.

### Bailment for hire where no hire is paid—Degree of care.

A bailment for hire, where no hire is paid, exists in such cases only where the bailment is a necessary incident of the business in which the bailee makes profit, as in the case of a customer and shop-keeper.  The bailment in such case is reciprocally beneficial to both parties and the law requires ordinary diligence on the part of the bailee and makes him responsible for ordinary neglect.

### Facts to charge shop-keeper as bailee.

The facts to charge a shop-keeper as bailee are for the jury, and if

the jury should find that a watch worn by a customer was such a personal belonging as men usually carry with them, and that, in the selection of a suit of clothes, it is necessary or usual to remove it from the person, and lay it aside, and, further, that the customer, by direction of the shopkeeper's salesman, placed the watch in a designated drawer preparatory to the selection of a suit of clothes, to purchase which he visited the place, the shop-keeper thereby became chargeable as bailee.

*Proof of loss—Failure to return—Burden of proof.*

While proof of failure of a bailee to return the property upon demand is not proof of loss, the absence of any such explanation of the neglect to restore the property as will enable the bailor to test his good faith, is sufficient to hold the bailee to prove that he has exercised ordinary diligence in the care of the property: Logan v. Matthews, 6 Pa. 417, applied.

*Defence by bailee—Theft—Care required of bailee.*

While the bailee is entitled to the benefit of inferences fairly deducible from his conduct when a return of the property is demanded, such inferences are for the jury. If the jury find as an inference from the facts proved that the property was stolen, such finding would be a complete exculpation, if the bailee exercised ordinary care.

Argued April 6, 1892. Appeal, No. 272, Jan. T., 1892, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1889, No. 158, refusing to take off nonsuit in assumpsit for breach of contract as bailees. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

The facts appear by the opinion.

*DeForrest Ballou*, for appellant.—Even if this was a bailment without reward, defendant is liable for gross negligence, and what constitutes gross negligence is a question for the jury: Doorman v. Jenkins, 2 Ad. & E. 256 ; Stanton v. Bell, 11 Am. Dec. 744; Foster v. Bank, 9 Am. Dec. 168 ; Beardslee v. Richardson, 25 Am. Dec. 596.

A consideration even of slight value or of a nature which may enure to the bailee is sufficient to make the bailment one for hire : Lawrence v. McCalmont, 2 How. 452; Hubbard v. Coolidge, 1 Metc. 92; Schouler on Bailments, 94. Such as the opportunity of getting more business ; 2 Kent's Com., 588, 591 ; Story on Bailments, §§ 429, 440, 621, 624.

If the bailment be for hire, the question of ordinary negligence, like that of gross negligence, is for the jury, and depends on the facts and circumstances, the nature and value of the subject matter, the customs of trade, the course of business,

the habits of the age and country, etc.: Walker v. Jackson, 10 M. & W. 161; Cairns v. Robins, 8 M. & W. 258; Whitney v. Lee, 8 Metc. 91; Green v. Hollingsworth, 5 Dana, 173.

The jury are at liberty either to believe or disbelieve the bailee's statement as to the manner in which the loss occurred: Tompkins v. Saltmarsh, 14 S. & R. 275; Storer v. Gowen, 18 Me. 174.

In addition to the cases cited in the opinion of the court, reference was made to the following: Morris v. Third Ave. Ry., 23 How. Pr. 345; Pullman Palace Car Co. v. Gardiner, 14 W. N. 17.

*Milton C. Work*, with him *Henry J. McCarthy*, for appellees.— There was no evidence that defendants ever authorized the salesman to receive valuables for safe-keeping, and plaintiff had no right to assume that fact. Such action certainly could not be within the ordinary scope of his employment, and it would be reasonable to suppose that, had the employers authorized such act, they would have provided a special depository where the salesman could deposit the valuables. A master cannot be held for torts of a servant who is acting beyond the scope of his authority. To hold otherwise would establish a most dangerous precedent, as any house, no matter how strong financially, might at any time be ruined by an unauthorized act of one of its employees.

In the present case the evidence is that plaintiff himself put the watch in the place where it was deposited; the salesman did not receive it or put it there, and cannot, of course, be held responsible therefor.

The contention that benefit might accrue to the store-keeper by reason of a salesman's taking care of valuables, as the customer would have an assurance that his property was being safely cared for while he was making his purchase, does not apply to the present case, as the customer could have had the same assurance had he handed the watch to his wife.

The burden of proof is upon plaintiff to show a loss resulting from such degree of negligence as would render the depository liable, and mere proof of loss is not evidence of such negligence. Giblin v. McMullen, L. R. 2 P. C. 317; Smith v. Bank, 99 Mass. 609; Pitlock v. Wells, 109 Mass. 452;

Knowles v. R. R., 38 Maine 55; De Haven v. Kensington National Bank, 81 Pa. 95, and Goff v. Wanamaker, C. P. No. 2, Phila. Co., 25 W. N. 358, are on all fours with our case.

If the defendants were bailees, their negligence was exactly the same as that of the plaintiff. He cannot prove negligence on the part of defendants without proving exactly the same degree of negligence on his own part.

Moreover, the evidence shows that the plaintiff's wife was there with her caba, into which she would have put the watch had plaintiff not put it in the drawer. Plaintiff knew this, but preferred for some reason " to put it on a pile of vests in the drawer." The condition of the drawer, it being almost filled with clothing and its general surroundings, was notice to the plaintiff for what purpose it was used, and that it was not a depository for valuables. When, therefore, he, with his own hands, put the watch there he did it at his own risk and is responsible for the consequences.

OPINION BY MR. JUSTICE HEYDRICK, July 13, 1892.

The defendants were retail dealers in clothing in the city of Philadelphia. The plaintiff, in company with his wife, visited their store for the purpose of purchasing a suit of clothes, having upon his person at the time a watch and chain. Having selected a coat and vest, and, being about to remove the corresponding garments for the purpose of trying on those selected, he took off his watch and chain, and was about to lay it on a pile of clothing, when the salesman who was waiting upon him said : " You had better put your watch here," indicating a drawer from which the vest had been taken, and adding : " It will be safe, I guess." The watch and chain were accordingly put in the drawer, and the drawer was closed by the salesman. Plaintiff, his wife and the salesman, then went to another part of the store where there was a mirror, and the coat and vest having been tried on were found to be satisfactory. They next turned their attention to the selection of a pair of pantaloons, in doing which the plaintiff went twice to a dressing-room connected with the store. While he was thus engaged in trying on pantaloons, the salesman conducted his wife to a seat some distance from the drawer in which the watch and chain had been placed and to the vi

cinity of which she had returned after the coat and vest had been selected, and there entertained her during the time her husband was in the dressing-room. When the entire suit had been selected and the plaintiff had replaced the garments which he wore when entering the store, he said to the salesman: "Now, we will take the watch." The salesman opened the drawer into which it had been placed, but it was not there. Several persons who had been in the store during the selection of the suit, but who had left, were sent for and questioned by one of the defendants but the watch and chain were not found and returned to the plaintiff. While search was being made for the watch, the plaintiff asked the salesman whether they were in the habit of putting things like it in the drawers, and he replied that they had done so many times and nothing of the kind had happened before. Having paid for the suit purchased, the plaintiff asked one of the defendants whether he thought it was right that he, the plaintiff, should lose the watch. The reply was that he would have to lose it, but the defendants would do all they could to assist him in finding it. The watch has never been returned to the plaintiff. Upon proof of these facts the court below nonsuited the plaintiff, and its refusal to take off the nonsuit is the single error assigned.

When the defendants opened a retail clothing store, they thereby invited the public to come into their place of business and purchase clothing in the usual manner. And when they extended this invitation they assumed some duty to the people who should respond to it. Even the householder who permits the use of a path leading to his house is deemed to hold out an invitation to all people who have any reasonable ground for coming thither to pass along his pathway, and is, therefore, held responsible for neglecting to fence off dangerous places: 1 Add. on Torts, 203. So too a shopkeeper is liable for neglect on leaving a trap door open without any protection by which his customers receive injury: Lancaster C. Co. v. Parnaby, 11 Ad. & E. 223. In like manner it cannot be doubted that if these defendants had maintained or permitted a danger of any kind in their store, and by reason of it the plaintiff had sustained bodily injury, they would have been answerable to him for the consequences. In such case, they would be said

to have been guilty of negligence, guilty of a neglect of a duty which they owed to the customer; but I apprehend that the duty neglected would arise from an implied contract that if customers would come to their store no harm that could reasonably be averted should overtake them, and the consideration for such promise would be the chance of profit from their patronage. Upon principle, the contract must be held to extend to the safety of such property as the customer necessarily or habitually, in pursurance of an universal custom, carries with him. Whatever thus necessarily, or, in common with people generally, he habitually carries with him, and must necessarily lay aside in the store while making or examining his purchases, he is invited to lay aside by the invitation to come and purchase, and, having laid it aside upon such invitation and with the knowledge of the dealer, he has committed it to his custody. And this being a necessary incident of the business upon which the customer was invited to come to the store, the care of the property would be within the authority of the salesman assigned to wait upon him; it would be part of the transaction in which he is authorized to represent his employer. This much was assumed without question in Bunnell v. Stern, 122 N. Y. 539, a case differing from the present in this only, that the article lost was a lady's cloak, and the saleswoman took no care whatever of it.

Assuming that the jury would have found that a watch is such personal belonging as men usually carry with them, and that in the selection of a suit of clothes it is necessary or usual to remove it from the person, and lay it aside, and farther that the plaintiff, by direction of the defendant's salesman, placed his watch in a designated drawer in the store preparatory to the selection of a suit of clothes, to purchase which he visited the store, the defendants thereby became chargeable as bailees. The principles which govern that relation are briefly and clearly stated by Judge Story in his work on bailments thus: " When the bailment is for the benefit of the bailor, the law requires only *slight* diligence on the part of the bailee, and of course makes him answerable only for *gross* neglect. When the bailment is for the sole benefit of the bailee, the law requires *great* diligence on the part of the bailee, and makes him responsible for *slight* neglect. When the bailment is reciprocally benefi-

cial to both parties, the law requires *ordinary* diligence on the part of the bailee, and makes him responsible for ordinary neglect. Manifestly the bailment in a case like the present is of the latter class, for, while the customer pays nothing directly, or *eo nomine*, for the safe-keeping of his effects, the dealer receives his recompense in the profits of the trade of which the bailment is a necessary incident. It was upon this principle that Lord Holt said, in Lane v. Cotton, 12 Mod. 483, an action was sustainable against an innkeeper for the loss of a guest's goods, and that the court of appeals affirmed the judgment of the court of common pleas of the city of New York in Bunnell v. Stern et al., *supra*. In Massachusetts the proprietor of a liquor store who permitted an order-slate for an expressman to be kept in his store and allowed people to leave packages there to be taken away by the expressman, was held to be a bailee for hire on the theory that what he thus permitted brought him an increase of business: Newhall v. Paige, 10 Gray, 366. This, however, would seem to be pushing the principle to a dangerous extreme ; it would render it unsafe for any business man to allow another's property to be left about his premises ; and would be in seeming conflict with our own cases of First National Bank of Carlisle v. Graham, 79 Pa. 106, and De Haven v. Kensington National Bank, 81 Pa. 95. The safer rule is to hold a bailment to be for hire, when no hire is paid, in such cases only as it is a necessary incident of a business in which the bailee makes profit ; and such the jury might have found the present case to have been.

The remaining question is whether, upon the assumption that there was a bailment for hire, proof of failure of the defendants to return the watch and chain upon demand was, under the circumstances, sufficient to carry the case to the jury. If what was said by the plaintiff should be taken as proof that the property was lost we would be met with a conflict of authority elsewhere as to the effect of it, and find little in our own books to help us determine whether the burden was upon the plaintiff to prove negligence or upon the defendants to repel the inference of it. But the plaintiff's evidence amounts to no more than that the salesman examined the drawer in which the watch had been placed and some others and did not find it, and that several persons not employees of the defendants who had been

in the store and left were sent for and interrogated without result. All this did not prove a loss, nor even that the defendants said the watch was lost or had been stolen. In Logan v. Mathews, 6 Pa. 417, it was held that if a bailee for hire return the property in a damaged state and give no explanation how the injury happened, the burden of proof to show that there was no negligence is upon him. In harmony with this judgment, a bailee who fails to give any such explanation of his neglect to restore the property entrusted to him as will enable the bailor to test his good faith ought to be held to proof that he has exercised ordinary diligence in the care of it. Doubtless the defendants were entitled to the benefit of any inferences fairly deducible from their conduct when the watch was demanded, but such inferences were for the jury. If the case had been submitted to them and they had found as an inference from the facts proved that the watch had been stolen such finding would have been a complete exculpation, unless they farther found that the defendants had not exercised ordinary care.

The judgment is reversed and a venire facias de novo awarded.