Moss *v.* Jannetti Body Co., Inc., Appellant.

Argued October 10, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*Milton Romm,* for appellant.

*George Strong* of *Smith & Strong,* for appellee.

OPINION BY CUNNINGHAM, J., January 30, 1931:
Defendant was engaged in the business of conducting an automobile conditioning plant in Philadelphia; its president, Albert Jannetti, acted for it in the mat-

ters out of which this case arose. In order that certain painting might be completed, plaintiff placed in defendant's custody for one day, May 16, 1929, her Nash cabriolet; it had an enclosed seat in front and a rumble seat, which could be folded and closed into a compartment, in the rear. During the afternoon, the car, with its contents, was stolen; several days later it was recovered by the police but the rear compartment had been broken open and a hat box and traveling bag, containing wearing apparel, etc., were missing. Plaintiff brought this action to recover $915, the alleged value of the stolen articles. Defendant in its affidavit of defense denied liability and set up a counterclaim for $45 for repairs and painting; the jury fixed the value of the clothing at $675, deducted the admitted counterclaim and rendered a verdict for plaintiff in the sum of $630. Motions for a new trial and judgment n. o. v. were filed by defendant; the motion for a new trial having been withdrawn, the court below overruled the motion for judgment n. o. v. and entered judgment on the verdict; hence this appeal by defendant.

The only errors assigned are denial of the motion for judgment n. o. v. and entering judgment on the verdict. An examination of the evidence discloses that there was no controversy at the trial relative to the material facts. They may be thus summarized: Appellee, a resident of Kentucky but temporarily living in Washington, D. C., visited her daughter, residing in Philadelphia, in the latter part of April, 1929, and employed appellant to make certain repairs to her car, which had not been entirely completed when she returned to Washington. It was arranged by correspondence that, during a subsequent visit in Philadelphia on her way from Washington to Kentucky, she would send the car to appellant's shop for one day for their completion. Appellee again arrived at her

daughter's home on May 15th and on the following morning her son-in-law drove the car to appellant's plant and left it there. When it was delivered to appellant the baggage, for the loss of which this suit was brought, was locked in the rear compartment and hidden from view. An employe of appellant was directed to take the car by elevator to the second floor of the shop for the completion of some painting. In complying with these instructions he ran the car out of the shop to the elevator entrance on a small side street; finding the elevator was then at the second floor he left the car on the street with the key in it and the engine running, went through the shop and up the stairs to the second floor, ran off a car then on the elevator, descended with the elevator for appellee's car and found that it had disappeared during his absence, a period of approximately ten minutes. Appellee testified that she had not instructed her son-in-law to notify Jannetti "that there were things contained in the car" but that he knew she was "enroute." Her son-in-law, Howe, after testifying that the baggage was in the locked compartment of the car when he delivered it to appellant, was asked, "Did you say anything to Mr. Jannetti to bring it to his attention that certain things were in there?" and replied, "No. I gave Mr. Jannetti to understand my mother-in-law was on the way to her home in Kentucky;" he further testified: "Q. You drove it into his garage the following morning and did not say or give him any actual notice of anything contained in that car? A. No." The learned trial judge submitted two main questions to the jury: Whether appellant was negligent in caring for appellee's car and, if so, whether it was liable for the reasonable market value of the articles stolen from the locked compartment. This being a reciprocally beneficial bailment, the rule of ordinary diligence applied and upon the first proposition the jury was correctly instructed that

appellant was not an insurer of the car or its contents, but it was its duty to do everything that an ordinarily careful person would do under the circumstances to see that the car was taken care of and delivered back to appellee. It was left to the jury to determine whether leaving the car "on a public street in the city with the key in it and the engine running for a period of five or ten minutes without any guard" amounted to negligence on the part of appellant's employe. If the suit had been to recover the value of the car, or for damage to it, we would have no difficulty in holding that the question of appellant's negligence was for the jury and that there was evidence from which it could reasonably be found that appellant was negligent. But the claim is solely for the market value of the wearing apparel abstracted from the car, after its theft, through the forcible breaking of the lock securing the compartment. Even if appellant's negligence be shown, or admitted, it does not necessarily follow that appellee was entitled to recover in this suit. The crucial question is whether, under all the circumstances, appellant owed appellee any duty to care for the articles, concealed in her car; this, in turn, depends upon whether appellant had notice of their presence. The general rule is thus stated in 38 C. J., p. 88, sec. 54: "The duty of a livery stable or a garage keeper to care for articles in vehicles left in his care seems to depend on notice as to the presence of the articles." Admittedly, there was no evidence of express notice. Therefore, the question involved on this appeal is whether, keeping in mind the character and value of the property, there was any evidence from which a jury could properly be permitted to draw the inference that appellant should naturally have expected that the car did or might contain such articles and was, accordingly, chargeable with constructive notice. The controlling

facts being undisputed, our inquiry is whether the court below should have disposed of the turning point in the case—notice to appellant—as a matter of law by affirming appellant's point for binding instructions or subsequently entering judgment in its favor.

The contention of counsel for appellant, as we understand his brief, is that even if appellant's negligence be conceded it was entitled, upon the whole record, to judgment in its favor because there was no evidence from which a jury should be permitted to find that it had such notice as would place upon it a legal duty to care for the property here in question. No complaint is made of the manner in which the question of notice was submitted to the jury; the argument is that the evidence did not justify its submission—a proposition not free from difficulty. The cases cited, Woodruff v. Painter and Eldridge, 150 Pa. 91; Hunter v. Reed's Sons, 12 Pa. Superior Ct. 112; and Mc-Knight v. Snellenburg and Company, 80 Pa. Superior Ct. 147, are of assistance in indicating certain general principles applicable to the problem but none of them furnishes a precedent. In the Woodruff case, a customer sought to recover the value of a watch and chain from the proprietors of a clothing store; at the direction of a clerk, the plaintiff, while trying on a suit, placed his watch in a designated drawer, from which it was stolen. The trial court entered and refused to take off a nonsuit and the Supreme Court reversed, holding that the plaintiff, under the evidence, was entitled to go to the jury. The action in the McKnight case was for the value of a pocketbook and its contents left by a customer upon a counter in defendant's store; a clerk, upon examination, found that it contained, among other things, a diamond ring wrapped in tissue paper; the clerk turned the purse and contents over to the proper official of the store, who negligently gave it to a claim-

ant other than the real owner. In these cases the defendants expressly assumed custody of the property, with full knowledge of its character and approximate value. The Hunter case furnishes a better illustration of the distinctions upon which such cases turn. There a customer in a clothing store, while trying on a suit, left his old trousers in a booth provided by the defendant for that purpose, from which they were stolen; in one pocket were a few dollars and in the fob pocket a diamond ring; he sued for the value of the clothing and its contents and recovered in the court below; upon appeal to this court the judgment was sustained as to the clothing and money but reversed as to the ring. After noting that the liability of the proprietor of a store is quite different from that of an innkeeper, ORLADY, J., speaking for this court, said: "The rule laid down in Woodruff v. Painter, supra, is intended to apply to such property only as the purchaser necessarily, or, in common with people generally, habitually carries with him and must necessarily lay aside while making his purchases. But when property is of a kind, or of a value, or is carried in such a way, or in such a place, as to give no suggestion to the storekeeper that it is of extraordinary value, or when it is carried in an unusual place, the customer should give notice of that fact so as to put the storekeeper on his guard, and a special contract for its care could then be made or declined. . . . . . . The courts are expected to take notice of such matters as are within the common experience or knowledge of men, and it is but reasonable to hold that it is quite outside of the ordinary conduct of men to carry a million dollars, or a pocketful of valuable gems, in their usual clothing. A diamond ring is designed and made to be worn on a finger, and not to be carried in a fob pocket of trousers. When property of like character is carried in such an unusual place it is clearly outside of the rule of Woodruff v. Painter."

The general proposition that "ordinarily the court cannot decide as matter of law just how, where and when an item of property is to be worn or carried so as to be within the rule laid down in Woodruff v. Painter" was stated and supported by authorities, but it was also said that this question depends largely on the facts of each particular case and this court decided that under the facts there present the plaintiff was not entitled to recover for the loss of his ring and modified the judgment accordingly. Here, appellee contends that the evidence to the effect that Jannetti knew she had arrived in Philadelphia the day before her car was brought to his shop and intended to continue her journey to Kentucky the day following, and upon the occasion of her previous visit in April had seen her place some baggage in the rear of her car, was sufficient to justify a finding that he had constructive notice that she probably had baggage in her car. In this connection, though, it must be borne in mind that he also knew she had spent the preceding night at the home of her son-in-law and that the car was to be returned to his home in order that she might continue her journey; it would seem that the more logical and natural inference would be that she had removed her baggage from the car before sending it to the repair shop. Moreover, the primary purpose in providing the compartment was for the installation therein of a rumble seat, and, although Jannetti must by reason of his business and experience be presumed to have known that baggage may be carried in such a compartment, the evidence is that it was locked when the car was delivered to him and there was nothing about its appearance, in the way of an attached trunk or other visible baggage carrier, to put him upon notice that appellee had left the greater part of her baggage in it. Then, too, this is not the case of an automobile tourist leaving a car over night, or

temporarily, in a public garage, but a case of a car owner sending it to a repair shop for the specific purpose of having a portion of the painting completed and with information communicated to the proprietor that the car would be returned to the residence at which the owner was visiting before her journey would be resumed. Under such circumstances should the repairman be held to have constructive notice that the owner had probably left a thousand dollars worth of baggage in a locked compartment of the car? A majority of the members of this court think that would be establishing an unreasonable rule and as there was no dispute about the facts we are of opinion the trial judge should have held as matter of law that appellee failed, under all the circumstances here present, to establish a sufficient basis for recovery.

It was admitted of record by counsel for appellee that she was indebted to appellant for the repair bill of $45.

The assignments are sustained, the judgment on the verdict is reversed, and judgment is here entered in favor of the defendant and against the plaintiff in the sum of $45, with interest from May 16, 1929.