## Fidelman-Danziger, Inc., v. Statler Management, Inc., et al.

*Bruce R. Martin, Pringle, Bredin & Martin,* for plaintiff.

*John M. Reed, Blaxter, O'Neill & Houston,* for defendants.

MONTGOMERY, J., November 19, 1956.—We have before us motions ex parte defendants for a new trial and for judgment n. o. v., or in the alternative for a limit of $50 on the verdict because of the Innkeepers' Act of June 12, 1913, P. L. 481, as amended, 37 PS §§61-64.

This is the second time this case has been tried,

binding instructions for defendants having been given to the jury by Soffel, J., in the first trial with a new trial subsequently awarded. The second trial before the late Judge Adams resulted in a verdict for plaintiff for the full amount of its claim with interest.

The action is to recover the value of a collection of jewelry contained in a sample case which together with a brief case was left by plaintiff's agent at a checkroom in the William Penn Hotel in the City of Pittsburgh on April 20, 1949. The attendant of the room accepted the two cases and issued to the agent two receipts reading as follows:

*EXHIBIT A*
Hotel William Penn
Pittsburgh, Pa.
This Check Void after 30 Days

G 5-60-29

Grip       Glad.

Date

"In consideration of the receipt and free storage for one day of the property (no value stated) for which this check is issued, it is agreed by the holder, in accepting this damage to said property unless caused by negligence of the hotel, in which event only hotel shall be liable for a sum not to exceed $50.00; except for a coat, hotel will not pay more than $25.00; and for an umbrella or cane, $5.00. The hotel shall not in any event be liable for loss or damage to said property by water, fire, theft or moth. A charge of 10 cents a day, or fraction thereof, will be made after 24 hours for each article left in the parcel room. The hotel is authorized to deliver property to any person presenting this check, without identification. Hotel may at any time sell at public or private sale any article left with it for more than 30 days and apply proceeds against charges then due and cost of sale."

Plaintiff's agent subsequently demanded the return

of the bags on tender of the receipts but received only the brief case and has not to this time received the sample case containing the jewelry.

The evidence disclosed that one of the attendants in charge of the checkroom had received a phone call which caused her to leave the room unattended for a short time after the bags were left there and before they were reclaimed. Defendants attempted to demonstrate that plaintiff's agent with an accomplice (who supposedly made the phone call) were responsible for the loss of the sample case but the jury evidently did not accept this explanation.

The William Penn Hotel was owned by defendant Pittsburgh Hotels, Inc., and was being operated and managed by defendant Statler Management, Inc. The other defendant, Stanley Parkinson, was a "concessionaire" who had been granted in a contract with the Pittsburgh Hotels, Inc., "the exclusive privilege to render checking and washroom services in the aforesaid hotel" for a consideration of $12,000 per year on certain conditions, viz.:

(1) That he render such service in a manner satisfactory to the hotel;

(2) That he furnish all employes necessary to properly conduct said services and to furnish suitable uniforms for his employes, which uniforms are to be satisfactory to the hotel;

(3) To carry workmen's compensation insurance on said employes;

(4) To personally supervise the services and;

(5) To indemnify the hotel for all loss, damage or liability arising out of claims for loss, damage or destruction of clothing handled by the concessionaire and for all other claims arising out of the rendition of the said services.

This contract was terminable by either party on 30 days' written notice or: "If in the judgment of the

Hotel, the services to be performed by the Concessionaire are not being rendered promptly and in a satisfactory and proper manner, the Hotel may cancel and terminate this agreement at any time upon written notice to the Concessionaire."

There is no provision in the contract permitting the concessionaire to charge for the services to be performed but it is apparent that he was to retain the gratuities that might be received from persons to whom the services were provided. It thus appears that the privileges were granted to Parkinson to provide, inter alia, checkroom service for patrons and guests of the hotel.

Plaintiff's agent was not a guest nor did he intend to become one. He was one of the general public whose only interest in the hotel was to enjoy this checking service intended for patrons and guests and which was extended generally without inquiry as to the status of those who received it. Such being the case, no application of the Innkeepers' Act of June 12, 1913, P. L. 481, as amended, 37 PS §§61-64, limiting the liability of defendants can be made since it relates solely to the liability of the hotel to its guest.

Much of defendants' brief is devoted to the argument that the act is applicable and is persuasive, particularly that part which points out that the innkeeper's liability might be greater to a nonguest than to one being served by the hotel in that capacity. However, throughout the act the purpose of regulating the rights and liabilities of the hotel keepers and innkeepers to their guests is manifest. There is nothing to be found affecting such rights and liabilities to nonguests. Pursuing this idea we have examined many cases on the subject and find none which in any way indicates that a person such as plaintiff's agent in this case meets any definition of guest as intended by the act. One who had eaten in the hotel coffee shop and was

occupying a room although unregistered was held not to be a guest in Warren v. Penn-Harris Hotel Co., 91 Pa. Superior Ct. 195.

Section 2 of the act does recognize the status of a person "intending to become a guest" but it would seem reasonable to interpret the other wording of that section to mean only those present in the hotel before they register since reference is made to their "delivering" their baggage and demanding a receipt.

Section 4 recognizes clearly that those persons who have been guests and have terminated their relationship as such although have not removed their baggage from the hotel and those who intend to be guests but have not arrived although their baggage has been forwarded, are not covered by the act. Their property is held "at the risk of such owner".

In 43 C. J. S. 1140, Innkeeper's, sec. 3b, is found this statement:

"To establish the relationship of innkeeper and guest, the parties must intend so to do; the person accommodated must be received as a guest and must procure accommodations in that capacity, although it is not essential that he register."

This relationship has been interpreted many ways and distinctions made between guest and boarder, room guest and patron of dining rooms, overnight and for short periods, but in every instance the presence of the person for the purpose of entertainment is vital.

In the present situation that factor is absent. Plaintiff's agent did not intend to enjoy personally the facilities of the hotel but merely to use it as a depository for his baggage. Under these facts he was not a guest.

What, then, is the responsibility of defendants, or any one of them, to plaintiff?

As between plaintiff and Parkinson, the situation was a bailment. The latter was operating a business for profit on his investment of $12,000 per year for

the concession and his other expenditures for employes, etc. The checkroom services were not limited to those which might ordinarily be expected to be rendered gratuitously by a hotel to its guests and patrons but were extended to anyone who might desire them. The fact that no specific charge was made (the receipt states the first day was free) and the compensation for same left to the discretion of the person using them would not alter the situation. Everyone using the checkroom would feel an obligation to pay what was reasonable and not expect the service to be without charge. The case was therefore properly submitted to the jury without objection on the basis of it being a bailment for hire with benefits to both bailor and bailee involving ordinary negligence and not a bailment for the sole benefit of the bailor involving gross negligence. In this connection, the case was otherwise properly submitted: O'Malley v. Penn Athletic Club, 119 Pa. Superior Ct. 584.

Plaintiff offered proof of delivery of the bag to defendant Parkinson and a demand for its return. This made out a prima facie case against the bailee to cast upon him a burden of showing that the loss was due to causes consistent with due care on his part. No explanation of the disappearance of the bag was forthcoming from defendants; consequently, the burden never returned to plaintiff to prove negligence, that being presumed from the establishment of its prima facie case.

Defendants argue that if such is the case, then the limit of the verdict should be determined by the check given to plaintiff's agent hereinbefore set forth limiting the amount of recovery. However, in Jacks v. Yellow Cab Co., 100 Pitts. L. J. 465, 467, Lencher, P. J. of our county court, said:

"A written check, slip or tag delivered to the bailor when a bailee receives luggage, or baggage, or an auto-

mobile or other article is usually not a contract, it is a mark of ownership and identification only, a receipt, and cannot have grafted upon it without notice an exemption or limitation of liability for loss or damage occasioned by the negligence of the bailee."

However, regardless of any contract limiting the amount recoverable, we are of the opinion that defendants cannot be held liable for anything more than might be reasonable for persons of the additional responsibilities being imposed. Defendants in the present case were unaware that one of the bags they accepted contained articles of unusual value, greater than a reasonable person would deposit in a public checkroom where the articles were subject to be reclaimed on production of a checkroom receipt without identification of the bearer. In Hunter v. Reed's Sons, 12 Pa. Superior Ct. 112, involving a theft of a diamond ring in defendant's clothing store, the court said:

"But when property is of a kind, or of a value, or is carried in such a way, or in such a place, as to give no suggestion to the storekeeper that it is of extraordinary value, or when it is carried in an unusual place, the customer should give notice of that fact so as to put the storekeeper on his guard, and a special contract for its care could then be made or declined."

In Moss v. Jannetti Body Co., 101 Pa. Superior Ct. 1, this doctrine was applied in the case of an automobile owner losing valuables in a car left with a garageman for repairs and it was held that liability depended on notice of the presence of the articles.

See also Mee v. Sley System Garages, Inc., 124 Pa. Superior Ct. 230, wherein the question of notice of suitcases in a parked automobile was left to the jury. See also the application in Jacks v. Yellow Cab Co., supra.

Unfortunately, this case was tried entirely on the theory of negligence by the bailee and contributory

negligence by the bailor and the jury charged accordingly; the contributory negligence being the failure to advise the checkroom attendant that the bag contained $7,000 in jewelry. However, there is nothing in the charge describing the duties imposed on the operators of the checkroom. Under the charge their responsibility could be found to be unlimited without notice. This, we think, is serious and a fundamental error, such as to warrant a new trial. A verdict based on such insufficient instructions is erroneous and contrary to law.

The final question is whether liability may extend to all defendants. If it may not, the motions for judgment n. o. v. should be granted as to those who may not be held.

The checking concession was held by Parkinson under a contract dated October 7, 1947, from the Pittsburgh Hotels, Inc., the owner of the hotel. Statler Management, Inc., was the operator of the hotel at that time under its contract dated October 20, 1942, and presumably negotiated or agreed to the Parkinson contract since it permitted him to operate under it from its consummation until this situation arose. As has been noted previously, "Pittsburgh" reserved the right to approve all services rendered by the concessionaire who operated in the name of the "William Penn Hotel". Further, the receipt issued for the bag made no reference to Parkinson but referred to the hotel in every particular. Upon these facts we think all of the defendants may be held liable on the same theory that a possessor of land who, in the course of business, holds it open to members of the public is subject to liability for bodily harm caused on part of the land leased to concessionaires. See Restatement of Torts, sections 344 and 415, followed in Engstrom v. Huntley et al., 345 Pa. 10.

Here the Pittsburgh Hotels, Inc., and its manager, Statler Management, Inc., permitted their concessionaire, Stanley Parkinson, to conduct business activities on the hotel premises in the name of the hotel. The conduct of the checkroom in that manner must certainly estop the "Pittsburgh Hotels, Inc.", as well as the Statler Company, its agent in charge, from now denying that apparent agency, and particularly in the present case since supervision over the concessionaire is reserved to the corporate defendants. To people using the checkroom, everything indicated they were dealing with the William Penn Hotel. However, whether Parkinson was or was not an independent contractor or an agent of the other defendants may be determined at the next trial. They should not be discharged at this time by a judgment n. o. v. in their favor, and such motion will be refused.

In view of our intention to grant a new trial, it is unnecessary to rule on the evidence of value of the jewelry given by plaintiff's agent, Mr. Danziger, other than to refer to the opinion of Judge Soffel in disposing of the motion following the first trial.

### Order

And now, to wit, November 19, 1956, the within matter having been argued before the court en banc and briefs filed, on motion ex parte defendants for a new trial, after consideration of same it is hereby ordered that a new trial be and is hereby granted.

### Order

And now, to wit, November 19, 1956, the motion ex parte defendants for judgment notwithstanding the verdict is refused.