## Z. K. FULTON v. M. W. ALEXANDER.

A bailee without hire is responsible only for good faith and ordinary diligence, that is, such as an ordinarily prudent man would exercise in matters of his own business; and this is to be determined by the jury under proper instructions from the Court.

Appeal from Calhoun.   Tried below before the Hon. Fielding Jones.

The defendant being about to leave Indianola, for New Orleans, received from the plaintiff a package containing $540, to be delivered in the latter city free of charge to one Hays, an attorney at law.   When he arrived at New Orleans, finding the yellow fever prevailing as an epidemic to such an extent that it was considered dangerous for him to remain in the city, he deposited his own money with a commercial firm, J. W. Dodd & Co., of good standing, with which he was in the habit of doing business, and also delievered to them the package for Hays, with instructions to deliver it, which they promised to do, and left the city the same day.   This was about the middle of August, 1855.   One of the members of the firm called several times on Hays, at his office, previous to the 25th of August, to deliver the money, but did not find him in.   At the last call he left a note on Hays' desk, informing him that said money was deposited with the firm for his account.   A short time subsequently the defendant was in the city on his way home, and enquired of the firm whether the money had been delivered to Hays, and received for reply that Hays had been notified that they held the money for him, but had not yet called for it.   On the 29th of October, the firm was protested.   Hays afterwards called for the money, but it was not

paid. When the defendant delivered the money to J. W. Dodd & Co., they promised to write to the plaintiff the circumstances of the deposit, but owing to the instructions being verbal they had forgotten the name, and had not done so. Plaintiff brought suit to recover the money.

The Court instructed the jury as follows :

1st. If the jury believe from the evidence, that at the time the defendant, Fulton, arrived in New Orleans the yellow fever was prevailing to such an extent that his life would have been endangered by his remaining in that city ; and if they further believe from the evidence, that Fulton deposited the money together with his own, with Dodd & Co., a house in good standing, with instructions to said house to pay over the money to Hays, and left the city, and that the money was lost by the subsequent failure of said house, Fulton would not be liable and they would find for the defendant.

2d. But if they further believe that Fulton was subsequently in the city, when no such cause existed, and before the failure of said house, and that he then failed to withdraw the money from said house and pay over to Hays, he would be liable, and they will find for the plaintiff.

Verdict and judgment for plaintiff. Motion for new trial overruled. Defendant appealed, and assigned for error that the Court erred in its second instruction to the jury.


*J. J. Holt*, for appellant. The defendant · being a bailee without consideration was responsible only for gross neglect or a· breach of good faith. (Lampley v. Scott, 24 Miss. R. 528.) Upon whom does the burden of proof lie, in an action by the bailor on the grounds of gross negligence ? We hold the correct rule to be that the bailor is not entitled to recover without shewing gross negligence on the part of the bailee, affirmatively. (Story on Bail., Sec. 213 ; Beardsley v. Richardson, 11 Wen. R. 85.) In this case the loss of the money

was shown and it was not shown that it was lost by the gross negligence of the defendant, which alone would make him liable. He was not required to use more than ordinary diligence under the circumstances in which he found himself placed, and such diligence and care as he used in and about his own business of the same kind, and if loss occurred he will not be responsible. This branch of the law is fully treated in 2 Kent. Com. 569, and in Story on Bailments, 179 to 190.

*W. Ogden,* for appellee.

WHEELER, J. This was a bailment in which the defendant, the bailee, was to perform the service of carrying and paying over the money to the person for whom it was intended without receiving any compensation for his trouble and care. His services were wholly gratuitous. They were not officiously proffered by him, but were sought by the plaintiff for his own exclusive benefit. It was that species of bailment which is called in the civil law *mandatum,* and by Sir William Jones and Mr. Justice Story, in treating of the Common Law upon that subject, a mandate. And as respects the diligence which the mandatary is required to use respecting the thing committed to his charge, the doctrine of the Common Law universally applied, is that he is bound only to slight diligence, and is responsible only for gross neglect. (Story on Bailments, Sec. 174.) Judge Story, in his Commentaries on the Law of Bailments, refers to many authorities and cites many instances of the application of the rule, which show that it is the doctrine of the Common Law universally applied to mandates, both in the English and American Courts. Thus in Shiells v. Blackburne, (1 H. Black. 158,) where a merchant had undertaken gratuitously, but not officiously, to enter certain goods of the plantiff's at the custom-house with his own goods of the like kind ; and by mistake he entered them by the wrong name, so that all the goods were seized and lost, both the plain-

tiff's and his own ; an action was brought to recover damages for this misfeasance. The Court, upon full consideration, held, that as there was not any gross negligence, the action would not lie. The doctrine of this case, it is said, has never been impeached, and is incidentally confirmed in other analogous cases. (Story on Bail., Sec. 181.) It is to be observed that in this case the situation or profession of the mandatory was not such as to imply any particular knowledge or professional skill. If it did, it was said by Lord Loughborough, an omission of that skill would be imputable to him as gross negligence. " But," (his Lordship added,) " when an application, under the circumstances of this case, is made to a general merchant to make an entry at the custom-house, such a mistake as this is not to be imputed to him as gross negligence." And so the whole Court held, that a mandatory, who acted *bona fide*, was not liable except for gross negligence. Sir William Jones puts this case, as illustrative of the rule : " If Stephen desires Philip to carry a diamond ring from Bristol to a person in London, and he put it with bank notes of his own into a letter case, out of which it is stolen at an inn, or seized by a robber on the road, Philip shall not be answerable for it, although a very careful, or perhaps commonly prudent man, would have kept it in his purse at the inn, and have concealed it somewhere in the carriage. But if he were to secrete his own notes with peculiar vigilance, and either leave the diamond in an open room, or wear it on his finger in the chaise, he would be bound, in case of a loss by stealth or robbery, to restore the value of it to Stephen." (Jones on Bailments, 62.) Upon which Judge Story observes : " The case of robbery may, perhaps, admit of some qualification ; for if the robbery were by force, and if everything found on Philip's person, including his purse, were stolen, then, if the exposure of the ring did not afford any additional temptation, nor aid the loss, it might, perhaps, be thought that the bailee ought to be excused." (Story on Bail., Sec. 184.) It might be difficult to

determine that the exposure of the ring, in the case supposed, did not afford an additional temptation. But that is foreign to the present inquiry. Judge Story declares this, as the true rule of the Common Law upon the question we are consider- ing, that a mandatory, who acts gratuitously in a case, where his situation or employment does not naturally or necessarily imply any particular knowledge or professional skill, is respon- sible only for bad faith, or gross negligence. (Id., Sec. 182, a.) It would seem difficult to hold the defendant in this case re- sponsible for the loss to the plaintiff of his money by the ap- plication of the rule to the facts of this case. It cannot be doubted that the defendant acted in good faith. He took the same care of the plaintiff's money that he did of his own. That he did not go about to find the person to whom it be- longed to deliver it in person, thereby protracting his stay in a city where a malignant epidemic was prevailing, at the risk perhaps of his life, but chose rather to deposit the money with the members of a commercial house with whom he had been in the habit of transacting business, and in whom he had con- fidence, upon their promise to deliver the money as directed, can scarcely be imputed to him as an act of gross negligence. It would be hazardous to assume a gratuitous undertaking of this sort, if it would subject the party to responsibility unless he performed the undertaking literally, at whatever hazard of his own personal safety. Can it be said that he had less right to confide in the promise of those with whom he deposited the money than the plaintiff had to confide in his promise ; or that he used less care and diligence in respect to the money com- mitted to his charge, in depositing it with that house, under the circumstances, than the plaintiff did in committing it to his care? The Court was of opinion that the circumstances justified the disposition made by the defendant of the money at the time ; but, in effect, held that his having failed to ob- tain and pay it over, when in the city, on his return home, ren- dered him liable to make good the loss to the plaintiff. To

this, as a legal conclusion upon the facts, we do not assent. It does not appear when it was that the defendant returned to the city ; but the witness says it was shortly after the deposit of the money. We would not, perhaps, be warranted in assuming that the same cause did not exist to deter him from protracting his stay in the city. But if it did not, he was told by the witness that Hays, to whom the money belonged, had been notified of the deposit and had promised to call for it in a short time. This, it would seem, was sufficient to satisfy a man of ordinary prudence, having no cause to distrust the integrity of the firm with whom he had made the deposit, that the money would be delivered when called for. Can it be imputed to him as gross negligence that he did not, after this assurance, insist on taking the money and going and delivering it in person ? We think not. It appears that he left money of his own with the house, to be applied under his instructions. He evidently did not distrust their integrity ; and there is nothing in the evidence to induce the supposition that he then had any cause to suspect that the confidence he had been accustomed to repose in them had been misapplied. If he employed the same care, attention and diligence in respect to the plaintiff's money which he, as an ordinarily prudent man, would have used in respect to his own—and we are not prepared to say he did not—gross negligence cannot be imputed to him, and he ought not to be held responsible. We are therefore of opinion that the second instruction given by the Court, which, in effect, determined that the defendant's failure to pay over the money, when in the city, on his return home, rendered him liable to the action was erroneous. We think it should have been left to the jury, under proper instructions by the Court, to decide whether the defendant used such diligence as a gratuitous bailee ought to use under such circumstances. The judgment is reversed and the cause remanded for further proceedings.

Reversed and remanded.