## GRANBERRY v. TEXAS PUBLIC SERVICE CO.

No. 5535.

Court of Civil Appeals of Texas. Amarillo.

April 5, 1943.

Emmett Shelton, of Austin, for appellant.

White, Taylor & Chandler, Ike D. White, and H. Grady Chandler, all of Austin, for appellee.

STOKES, Justice.

Appellant, H. B. Granberry, instituted this action against appellee, Texas Public Service Company, a corporation, to recover damages for the alleged conversion of certain electric lighting fixtures and an old elevator that had been removed from appellant's building and stored in the warehouse of appellee. The record shows that appellee, during the year 1913 or prior thereto, while it was operating under the name of Austin Gas Light Company, leased from appellant a two-story building in the city of Austin which it used for many years thereafter as its general offices and mercantile store. It was engaged in the sale and distribution of gas in the city of Austin and in connection therewith it maintained for sale to the public a stock of appliances, fixtures, and other similar equipment. Its gas plant was located in another part of the city some distance from its general offices in appellant's building. Its stock of fixtures and other like articles were displayed in the front part of the building which was separated from the rear portion of the building by a large counter. On the second floor were the general offices and bookkeeping and accounting department where its officers and employes discharged administrative and clerical duties in connection with its business. During appellee's occupancy of appellant's building, its corporate name was changed from time to time but throughout the entire term it remained the same corporation, its final name being adopted as "Texas Public Service Company." Sometime after 1933, without consulting appellant, appellee changed the lighting fixtures in the building and installed those being used by it at the termination of the rental contract when the building was vacated about June 1, 1940. Upon vacating the building, appellee removed the electric fixtures that had been installed by it.

When appellant first leased the building to appellee, the building contained a hand-operated elevator located in the rear; and, the elevator being of no use to appellee, at sometime during appellee's tenancy it requested of appellant permission to remove the same, which was granted, and at appellant's request and for his accommodation the machinery and material composing the elevator were stored in appellee's warehouse at its plant where it remained for about fourteen years. Shortly before this suit was filed, appellant informed appellee's general manager that he had use for the elevator and desired to repossess himself of it. A search of the premises by appellee's employes failed to reveal the elevator, and appellee's manager informed appellant, "I imagine the boys sold the thing for junk." A short time after this conversation, however, the elevator was located in the warehouse and tendered to appellant. Appellant alleged that these acts of appellee constituted conversion of the electric light fixtures and the elevator.

The case was submitted to the court without the intervention of a jury and judgment was rendered denying appellant any recovery, from which he duly appealed to the Court of Civil Appeals of the Third District and the case is now before us upon a transfer ordered by the Supreme Court equalizing the dockets of the Courts of Civil Appeals.

Appellant presents the case upon a number of assignments of error which may be reduced to three controlling issues, namely: first, that appellee, a corporation having for its stated purpose the sale and distribution of gas, can not claim and remove light fixtures installed by it during its tenancy of appellant's building which it used as a business office, under the guise of "trade fixtures"; secondly, that the written lease which permitted the lessee to remove trade fixtures at the termination of the lease did not operate to permit the lessee to remove such fixtures fourteen months after the term had expired and during which appellee continued to occupy the premises from month to month; and, thirdly, when the appellee stored appellant's elevator in its warehouse and later disposed of it without appellant's permission, it was guilty of conversion and liable to appellant for the in-

trinsic value of the elevator in the absence of a market value thereof.

■ It is now well settled that, as between a landlord and his tenant, the term "trade fixtures" refers to and means such articles as may be annexed to the realty by the tenant to enable him properly or efficiently to carry on the trade, profession, or enterprise contemplated by the tenancy contract or in which he is engaged while occupying the premises, and which can be removed without material or permanent injury to the freehold. Menger v. Ward, Tex. Civ.App., 28 S.W. 821; Second Nat. Bank v. O. E. Merrill Co., 69 Wis. 501, 34 N.W. 514. Under the first point noted above, appellant contends that the business of appellee was the sale and distribution of gas; that the light fixtures involved in this case were not used at the plant where appellee carried on its business but were used in its business offices located in appellant's building, in the front part of which it had on display electric light appliances and fixtures for sale to the public, and on the second floor of which it maintained its bookkeeping and accounting department.

The testimony showed that the electric light fixtures were installed by the appellee in appellant's building at its own expense after the building was acquired by appellee as a tenant and after the date of its last written lease which was September 19, 1933. The fixtures were installed to replace an outmoded lighting system and were necessary to furnish light for both the first and second floors of the building. At the time the fixtures were installed, appellee also wired the building for electric lighting, placing wires, cables, and other necessary appliances in the ceilings, walls and floors, making outlets at such locations as were necessary and convenient to attach fixtures and supply the required light for its offices and salesroom. The wire so installed terminated at the outlets, and to the outlets were attached devices containing eyes to which the fixtures were attached by means of hooks. The fixtures contained separate wires extending to the light globes and the upper ends of these wires were twisted around and connected with the terminus wires of the cables in the walls and floors, the joints thus made being protected by tape. In order to remove the fixtures, it was necessary only to untwist the wires in them from the wires in the cables and lift the hooks of the fixtures from the eyes at the termini of the cables. It does not appear that any material or permanent injury or damage to the building was occasioned by this process. The wires and cables placed in the ceiling, walls, and floors of the buildings were not removed but were left intact.

■ While it is true that appellee was engaged in the sale and distribution of gas and owned a plant, warehouse, and distribution system located in another part of the city, and that the fixtures removed by appellee were located in another building which was in the business section and located some distance from the plant and was used by appellee as its general offices where it maintained offices, desks, and equipment for its officers and employes, it does not follow that the offices and equipment maintained by it in appellant's building were not being used by appellee and were not necessary for the proper and efficient conduct of the enterprise in which it was engaged while occupying appellant's building. Indeed, the building was leased and occupied for many years by appellee for the purpose of being used as its general offices and salesroom. It was so occupied when the written lease of September 19, 1933, was executed, and after the written lease expired, appellee continued so to use the premises under a month-to-month arrangement until it was vacated and the fixtures removed. The offices in appellant's building were as necessary to the pursuit of appellee's business as were the plant, storage room, and warehouse, and the mere fact that they were not at the same location or connected is a matter of no consequence.

■ Our courts have joined those of many other jurisdictions in holding that, as between a landlord and his tenant, such appliances as those here involved may be annexed by the tenant to realty or rented buildings to enable him to carry on his trade, profession, or enterprise, and in the absence of a stipulation to the contrary, they may be removed by the tenant at the end of the term. Sanders v. Lefkovitz, Tex. Civ.App., 292 S.W. 596; Hertzberg v. Witte, 22 Tex.Civ.App. 320, 54 S.W. 921; Wright v. Macdonell, 88 Tex. 140, 30 S.W. 907; Menger v. Ward, Tex.Civ.App., 28 S. W. 821; Nine Hundred Main, Inc., v. City of Houston, Tex.Civ.App., 150 S.W.2d 468; Raymond v. Strickland, 124 Ga. 504, 52 S. E. 619, 3 L.R.A.,N.S., 69.

The written lease contract of September 19, 1933, contained the provision that "all alterations, additions, and improvements, except trade fixtures, put in at the expense of the lessee shall be the property of the lessor and shall remain upon and be surrendered with the premises as a part thereof at the termination of this lease." Until the expiration of the written contract on September 19, 1938, therefore, appellee unquestionably had the right to remove the electric fixtures installed by it because the written contract specifically so provided. It may well be said that the month-to-month contract under which appellee occupied appellant's building after the expiration of the written contract was impliedly the same as the written contract in so far as the fixtures were concerned. It is not necessary for us to so hold, however, because the fixtures were attached to the building by appellee during the term of its tenancy for its convenience in carrying on its business therein and the contract under which it occupied appellant's building after the expiration of the written lease contained no provision under which appellee released or waived its right to remove them at the end of the term.

We find no merit in the first and second contentions presented by appellant and his assignments of error raising those questions will be overruled.

In reference to the alleged conversion by appellee of appellant's elevator, the record shows that the arrangement made between them for its storage in appellee's warehouse was wholly for the accommodation of appellant and without charge. It became necessary to remove the elevator because it occupied space in the building that was needed by appellee for its offices and it had no use for the elevator. Appellant consented to its removal and asked appellee's manager if he knew of a place where it could be stored. The manager suggested and consented that it might be placed in the warehouse at appellee's plant. When it was removed and dismantled, it was placed in storage there and remained there for more than fourteen years, during which no charge was made for the storage, no complaint was made by appellant, nor did he make any request for its return. The testimony did not reveal any agreement on the part of appellee to return the elevator to appellant. It merely consented to furnish a place where the elevator might be stored until appellant had need for it. This arrangement certainly amounted to nothing more than a gratuitous bailment. In fact, it hardly amounted to that, because there was involved in it no mandatum or engagement of appellee that it would perform any act in connection with the elevator while in its possession. Fulton v. Alexander, 21 Tex. 148; Thornton v. Athens Nat. Bank, Tex.Civ.App., 252 S.W. 278. Moreover, there was no express agreement that appellee would return the elevator to appellant at any time or under any circumstances. To be sure, appellant had the right to retrieve it or go to the warehouse and take it any time he desired to do so, but that is quite a different matter from an engagement of appellee specifically to preserve it and return it to him. When appellant called for the elevator, appellee's manager caused a search to be made for it and informed appellant that they had not found it, stating to him that he imagined some of the boys had sold it as junk. Appellant made no personal search for the elevator and, as far as the testimony showed, he made no further effort to locate it. A short time afterwards the elevator was located by the employes of appellee in the same place where it had originally been stored. The reason it was not located by the first search made by them was that it was entirely covered by other material in the warehouse. This does not constitute an act of conversion. In fact, since the elevator was subsequently found and tendered to appellant, he contends only that the conversion consisted of the fact that appellee's manager told him it had been sold. Appellant so testified, but appellee's manager testified that he told appellant he imagined some of the boys had sold it as junk. In deference to the judgment, we must accept the statement of appellee's manager as being the trial court's interpretation of the testimony. As we have said, the arrangement in reference to the elevator could not amount to more than a gratuitous bailment, and assuming that it was such, appellee owed appellant only slight diligence and was liable only for gross negligence. Citizens' Nat. Bank v. Ratcliff & Lanier, Tex.Com.App., 253 S.W. 253; Texas Cent. R. Co. v. Flanary, Tex. Civ.App., 50 S.W. 726; Fulton v. Alexander, 21 Tex. 148; State's Prison v. Hoffman & Bros., 159 N.C. 564, 76 S.E. 3.

Gross negligence is defined by the courts to be an entire want of care which would raise a presumption of a conscious indifference to consequences. Dallas City

R. Co. v. Beeman, 74 Tex. 291, 11 S.W. 1102. Since appellee was under no contractual duty to appellant to exercise any diligence in preserving the elevator, or deliver it back to him, but agreed only to furnish space in its warehouse where it might remain until appellee had need for it and where he could take it at any time he desired to do so, and shortly after it was called for by appellant it was found in the warehouse in apparently as good condition as it was when placed there more than fourteen years before, appellee was not guilty of conversion. Neither did the statement made to him by appellee's manager constitute a conversion of the elevator.

We have examined all of the assignments of error and contentions presented by appellant and find no merit in any of them. The judgment of the court below will therefore be affirmed.