**GREATER SOUTHWEST INTERNATIONAL AIRWAYS, INC., Appellant,**

v.

**ARLINGTON EXECUTIVE AIR, INC., Appellee.**

No. 16954.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 4, 1968.

Vecchio & Vecchio, and James S. Vecchio, Arlington, for appellant.

Thompson, Knight, Simmons & Bullion, and John W. Copeland, Dallas, for appellee.

## OPINION

RENFRO, Justice.

Appeal by plaintiff from an adverse summary judgment.

Plaintiff alleged defendant was operator of the Arlington Municipal Airport under lease from the owner, the City of Arlington. Plaintiff occupied space in the airport hangar under lease agreement with defendant. Plaintiff owned and operated a business having as its principal activities sales charter, repair and maintenance of aircraft, instructing new pilots and renting aircraft. On June 17, 1966, a fire destroyed the hangar. All of plaintiff's equipment and records were destroyed, which, including a $45,000 Beechcraft, amounted to a total of $250,000. Plaintiff alleged by reason of defendant's carelessness and negligence a fire was caused or permitted to break out in the hangar. Eleven acts of negligence, mostly of omission, were alleged in support of its contention that defendant was negligent in failing to keep the hangar safe from peril of fire.

Both parties filed motions for summary judgment. After considering "the pleadings, * * * Motions for Summary Judgment and Affidavits and Counter-Affidavits, and the depositions on file," the court entered judgment for defendant, reciting an absence of any genuine issue as to any material fact. We assume from the language of the judgment the court upheld all of defendant's grounds for judgment.

Defendant's motion for summary judgment was based on its claim that (1) the principle of "no-duty" was applicable as a matter of law, (2) volenti non fit injuria or assumption of risk was applicable as a matter of law, (3) uncontroverted facts established contributory negligence on the part of plaintiff as a matter of law, (4) no evidence defendant's negligence caused the fire, and (5) plaintiff failed as matter of law to assert a cause of action with respect to the Beechcraft.

Plaintiff has appealed on only two points of error, namely, (1) the court erred in rendering summary judgment for defendant because "no duty" and "volenti non fit injuria" do not apply, and (2) the pleadings, affidavits and depositions raise more than

a scintilla of evidence of negligence on the part of defendant.

The Greater Southwest International Airways, Inc., was a "one man" operation in so far as operation and management were concerned. Since it is necessary to relate at some length the deposition testimony of its president, Douglas Lewsader, we, for simplicity, refer indiscriminately to Lewsader and plaintiff corporation as "his," "he" or "plaintiff."

Plaintiff testified: for a time he operated his business at Greater Southwest Airport north of Arlington, but in 1965 moved to defendant's airport because of more favorable rental terms. The hangar at defendant's airport was prefabricated. It was a customary and acceptable hangar. Plaintiff made an oral rental agreement with defendant for space in the large storage hangar. He did not keep his planes in the hangar. He was given office space in the storage hangar. Work was done on his aircraft just outside of the hangar near the storage room. Partitions were erected, with approval of plaintiff, in the same hangar. There was nothing uncommon about this type of partitions.

In February or March, 1966, plaintiff, by contract with defendant and with consent of the City, took over operation of the entire airport. In June, 1966, plaintiff turned the airport management back to defendant, but continued to occupy office and storage space as a tenant.

While plaintiff was manager he made no changes in the hangar. He was well aware of the limited water supply at the airport. There were no water mains from Arlington. While operating the airport plaintiff told representatives of defendant the water supply was inadequate for operation of the airport. They told him "like the other improvements there that was necessary, help yourself." Plaintiff made no investigation about obtaining additional water. He never discussed the water problem with the City.

Plaintiff knew there was no sprinkler system. He knew there was no fire alarm system, and that there was no fire detection system of any kind. He knew there was no fire fighting equipment on the premises except wall fire extinguishers. There were fifteen or twenty such extinguishers in the hangar, all in good operating condition. Plaintiff, while operating the airport, discontinued 24 hour service, hence there were no attendants present from 10:00 P.M. until 6:00 A.M. No other tenant, or user, objected to such action. Other tenants of the hangar had keys and could enter and work at night.

After defendant resumed operation management, the care and upkeep of the hangar was continued just as it had been under plaintiff's management. He voiced no complaints.

Some weeks before the fire plaintiff found, while manager of the airport, in a section other than the space he occupied as tenant, a 50 gallon barrel which had leaked carburetor cleaner, a highly volatile and explosive liquid, on the floor. Just prior to the fire he told defendant he smelled that odor again. The liquid was there when he took over control and he left it when he relinquished control. He did not know whether defendant did anything about it. There was a short in the coke machine wiring which caused a shock when the plug was touched. He reported this to defendant but no repairs were made.

While operating the airport plaintiff never considered installing a sprinkler system or fire alarm system. He kept no watchman and saw no need for one. No other comparable airports had night watchmen. He asked for and received adequate police protection from Arlington.

Plaintiff left the hangar at 5:30 or 6:00 o'clock on the 16th. He learned of the fire on the morning of the 17th. So far as he knew, all electrical appliances and machines were shut off at quitting time on the 16th.

Plaintiff had no idea where, when or how the fire started, or what caused it. Other

fires had occurred in the community—arson was suspected. He knew of no witness who could testify as to the cause of the fire. So far as he knew the hangar fire was just another unexplained fire. It was apparently an absolute holocaust. Aircraft gas tanks had exploded spreading the fire. In the debris of the hangar he saw the wreckage of two planes which had not been in the hangar when he left the day before.

He stored his Beechcraft in the hangar without charge, courtesy of defendant.

Plaintiff and other tenants had solvents, paints, fabric dope, paint thinner and oil in storage in the hangar. All such items are customarily stored in hangars.

The Fire Marshal from Arlington made periodical inspection of the buildings. He suggested only one change; it was made. The Marshal never called his attention to anything else which might need change or improvement.

The hangar was relatively clean and well kept. Trash was promptly removed and anything spilled on the floor immediately cleaned up. The hangar was accessible to everybody who had aircraft stored in it. There were a number of such persons.

The hangar and all activities connected with it were open to everybody to see. Plaintiff was familiar with the entire condition and operation. He knew there was some fire risk involved—that there was always possibility of fire of the type that did occur, but he remained in the building aware of the risk.

In summary, the witness testified that as tenant, manager and again as tenant he knew of the conditions which he claims were existent because of defendant's negligence, yet he remained in the building without complaint. He knew of nothing, even after the fire, which could have been inducive of fire except the conditions with which he was familiar and which existed when he accepted.

Mrs. Lewsader, by deposition, testified: she was secretary of plaintiff corporation. She knew nothing about the cause of the fire or where it started, and knew of no witness who could testify as to the cause of the fire. She knew of no complaints to defendant as to the way the hangar was maintained, constructed and operated except that there was a wall water leak during rains. The hangar was new, in good condition and well maintained.

Stripped of conclusions, the affidavit by plaintiff in opposition to defendant's motion for summary judgment adds little, if any, to his deposition testimony heretofore set out.

The summary judgment for defendant was without doubt proper as to the $45,000 asked for the Beechcraft.

■ If the bailment is for the sole benefit of the bailor, the law requires of the bailee only slight diligence, and holds him answerable only for gross negligence. 8 Tex.Jur.2d 247, § 24; Fulton v. Alexander, 21 Tex. 148 (1858); Citizens' Nat. Bank v. Ratcliff & Lanier, 253 S.W. 253 (Tex. Com.App., 1923); Exporters' and Traders' C. & W. Co. v. Bargainer, 45 S.W.2d 563 (Tex.Com.App., 1932); Granberry v. Texas Public Service Co., 171 S.W.2d 184 (Tex. Civ.App., 1943, no writ hist.); Ryan v. Schwab, 261 S.W.2d 605 (Tex.Civ.App., 1953, no writ hist.).

■ Plaintiff testified the defendant allowed him to store the Beechcraft in the hangar without charge or consideration, merely as an accommodation to plaintiff. He did not plead gross negligence and offered no evidence which could in any manner convict defendant of gross negligence.

We affirm the judgment against plaintiff on his claim concerning the Beechcraft.

Plaintiff did not testify as to the terms of the oral lease. He testified only that he paid "so much a square foot."

We have cited plaintiff's testimony at length because we believe that his own testi-

mony precludes recovery on at least two grounds, "no duty" and no showing of proximate cause.

The record is void of any evidence tending to show that the fire started as a result of negligence on the part of defendant. Plaintiff's testimony was centered on certain alleged existing negligent conditions which he claimed allowed the fire to spread, or failure of defendant to have adequate fire fighting equipment to extinguish the fire. Incidentally, there is no evidence that any one discovered the fire in time to have extinguished it regardless of how much fire fighting equipment or water might have been available.

■ A tenant, in the absence of an agreement to the contrary, takes the rented premises as he finds them, assuming the risk of apparent defects. There is no "implied warranty" as to the security of the premises. Where there is no agreement by the landlord to repair the demised premises, and he is not guilty of any fraud or concealment by failing to disclose hidden defects of which he has knowledge, the tenant takes the risk of their safety, and the landlord is not liable to him or to any person entering under his title or by his invitation for injuries sustained by reason of their unsafe condition. 35 Tex.Jur.2d 606–7, § 110.

Certainly the defendant was not guilty of fraud or concealment. Every alleged "lack" or "insufficiency" was well known to plaintiff at all times. He had been operator of the entire airport facilities until sixteen days before the fire. He knew then and he knew the following sixteen days of all the conditions about which he testified. From his testimony it appears he knew as much about the "conditions" as the defendant. There was no evidence the defendant made any covenant or agreement to make any changes whatever when plaintiff reverted to the status of tenant on June 1. Most of the landlord-tenant cases are based on personal injury claims. We fail to see, in this case, why the same

principle should not be applied to damage to personal property.

■ Under the record we hold that plaintiff's own testimony establishes conclusively that defendant, under the record in this case, was under no duty to plaintiff to do more than it did do in maintenance and operation of the hangar.

While the factual situation is different, we are supported by the principles of law set out in Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497 (1952); Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S. W.2d 391 (1954); Scott v. Liebman, 404 S.W.2d 288 (Tex.Sup., 1966), and numerous other cases.

■ In addition to affirming on the ground of "no duty", we affirm on the ground that plaintiff failed to submit sufficient evidence to support an issue on proximate cause. Without repeating his testimony we call attention to the fact that there was no evidence as to the cause of the fire, no evidence whether it started slowly or with an explosion; therefore no evidence that it could have been limited or extinquished even if it had been discovered at the very beginning. The only hint of the cause of the fire was plaintiff's statement that arson was suspected. That suspicion was not directed at defendant.

The statement in Exporters' and Traders' Compress & Warehouse Co. v. Schulze, 265 S.W. 133 (Tex.Com.App., 1924), "There is no evidence whatever as to the origin of the fire and none to the effect that it could, under any circumstances, have been extinguished by the employees of the warehouse company after it was discovered, * * *" is particularly applicable to the instant case, as is the court's holding, "it is possible that there are sufficient facts in this case upon which it may be inferred that the warehouse company did not use ordinary care in the manner in which it kept its premises, but there is no evidence upon which to base a finding that the fire

in question in this case was the proximate result of such cause."

Plaintiff does not contend he could present more evidence in a trial. To the contrary, both plaintiff and Mrs. Lewsader testified they knew of no witnesses who could provide any evidence regarding the fire. Since a directed verdict would have been warranted if the same testimony had been presented to a jury, summary judgment was proper.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.