**Opinion filed March 23, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00064-CV

_____

### GERARDO LUNA, Appellant

### V.

### ENDEAVOR ENERGY RESOURCES, L.P., Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CV-51,513**

### M E M O R A N D U M   O P I N I O N

This is an appeal from a summary judgment. Endeavor Energy Resources, L.P. (Endeavor) is an oil and gas operator based in Midland. Gerardo Luna asserts that he was injured while working on a drilling rig at a well site owned by Endeavor. The trial court granted a take-nothing summary judgment in favor of Endeavor. We reverse and remand.

*Background Facts*

Luna alleges that he was injured on August 31, 2013, while he was employed as a derrick hand by Acme Energy Services, Inc., which does business as Big Dog Drilling (Big Dog). Big Dog had been hired by Endeavor to drill a well known as Guitar 1-4 #1H, near Big Spring. The contract between Big Dog and Endeavor contemplated that Big Dog would provide a drilling rig for the operation. The agreement also anticipated that eventually the Big Dog equipment would be "rigged down" and removed from the premises.

At the time of the incident, Big Dog's crew was in the process of drilling the well. However, a problem had developed where a mixture of "soil, rock, dirt, sand, water, and other materials" kept collapsing into the wellbore before additional pipe could be inserted into the well. Luna alleges that, at the time of the incident, he was working approximately 100 feet above the derrick floor. In order to lower pipe into the well, he was pulling on a rope that was tied to the elevator ears on the rig. The rope broke twice, causing him to fall and injure himself on each occasion.

Luna filed suit against Endeavor in July 2015. The trial court granted Endeavor's motion for summary judgment and this appeal followed.

*Analysis*

Luna raises two issues on appeal. In his first issue, Luna asserts that the trial court erred when it overruled several objections that he filed in connection with the summary judgment motion and evidence proffered by Endeavor.[1] In his second issue, Luna contends that the trial court erred in granting Endeavor's motion for summary judgment. Because our ruling on the second issue disposes of the need to

---

[1]Luna's first issue also includes a challenge to Endeavor's evidentiary support relating to the applicability of Chapter 95 of the Texas Civil Practice and Remedies Code. This argument is more appropriately considered in connection with Luna's second issue, and we will do so below.

resolve the issue of Luna's objections, we limit our discussion to the question of whether the trial court properly granted Endeavor's motion for summary judgment.

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When the trial court's order does not specify the grounds for its summary judgment, we will affirm the summary judgment if any of the theories are meritorious. *Knott*, 128 S.W.3d at 216. Usually, when a party moves for both a traditional and no-evidence summary judgment, we first review the no-evidence summary judgment. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). "However, this rule is not absolute." *Neurodiagnostic Tex, L.L.C. v. Pierce*, 506 S.W.3d 153, 163 (Tex. App.—Tyler 2016, no pet.).

After an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). We review a no-evidence motion for summary judgment under the same legal sufficiency standard as a directed verdict. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claims. *Id.* Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508

3

S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). "Evidence is conclusive only if reasonable people could not differ in their conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). In reviewing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Merriman*, 407 S.W.3d at 248; *City of Keller*, 168 S.W.3d at 824.

*We Assume that Chapter 95 is Applicable*

As a preliminary matter, Endeavor contends that Chapter 95 of the Texas Civil Practice and Remedies Code applies to Luna's claims. "When Chapter 95 applies, it limits a real property owner's liability for common-law negligence claims that arise out of a contractor's or subcontractor's work on an improvement to the property." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). When a defendant establishes that Chapter 95 is applicable, the plaintiff must demonstrate that the property owner (1) "exercise[d] or retain[ed] some control over the manner in which the work [was] performed" and (2) "had actual knowledge of the danger or condition resulting in the . . . personal injury . . . or property damage and failed to adequately warn." *Id.* at 514 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (West 2019)).

4

The Chapter 95 standard is more restrictive than the common law negligence standard. Under the common law, an owner does not generally have an obligation to see that an independent contractor performs work in a safe manner. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). However, if the owner retains or exercises "supervisory control," it can be liable for negligence in exercising or failing to exercise control over the part of the independent contractor's work that created the dangerous condition. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997). Chapter 95 preserves the common law control requirement but narrows liability by adding the requirements that (1) the owner have actual knowledge of the condition and (2) failed to adequately warn. *Energen*, 642 S.W.3d at 511 n.6.

Endeavor characterizes its motion as a combined traditional and no-evidence motion for summary judgment. With respect to its traditional motion for summary judgment, Endeavor asserts that Chapter 95 of the Texas Civil Practice and Remedies Code is applicable to Luna's claim. It does so by asserting that "[h]ere, Luna was working on the rig, which is an improvement to real property." Endeavor does not cite any authority for the proposition that a drilling rig, in and of itself, is an improvement to real property. In this regard, Endeavor does not assert that a drilling rig is an improvement by virtue of its role in drilling an oil and gas well on the property.

Because the disposition of this case would be the same irrespective of whether Chapter 95 applies, we will assume for the purpose of our analysis that Chapter 95 applies to Luna's claims. But before addressing the merits of the summary judgment in this case, we note that there is split of authority among the courts of appeals as to whether a drilling rig constitutes an improvement to real property under Chapter 95.

5

Chapter 95 does not define "improvement," but the Texas Supreme Court has "broadly defined an 'improvement' to include 'all additions to the freehold except for trade fixtures [that] can be removed without injury to the property.'" *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 568 (Tex. 2016) (quoting *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49 (Tex. 2015)). In *Abutahoun*, the court utilized the definition of "improvement" from *Sonnier v. Chisholm–Ryder Company*: "all additions to the freehold except for trade fixtures [that] can be removed without injury to the property." *Abutahoun*, 463 S.W.3d at 49 (quoting *Sonnier v. Chisholm–Ryder Co.*, 909 S.W.2d 475, 479 (Tex. 1995)).

In *Lopez v. Ensign U.S. Southern Drilling, LLC*, the Fourteenth Court of Appeals cited *Sonnier* to determine that a drilling rig does not constitute an improvement under Chapter 95. 524 S.W.3d 836, 844–45 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The plaintiff in *Lopez* was a mud logger employed by a third party that was injured when he fell down a stairway on a drilling rig during the drilling process. *Id.* at 840. The court concluded that the rig was not an improvement because it would be moved to another site after the well was drilled—without injury to the well and thus was not "permanently annexed to the [w]ell such that it was transformed into an improvement to realty." [2] *Id.* at 844.

The court in *Lopez* acknowledged that the El Paso Court of Appeals reached a different result in *Painter v. Momentum Energy Corporation*. *Id.* at 845 (citing *Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 399 (Tex. App.—El Paso 2008, pet. denied)). *Painter* involved employees of a drilling company injured by a falling piece of equipment on a drilling rig during the disassembly of the rig from

---

[2]The court in *Lopez* assumed that an oil and gas well is an improvement to realty. 524 S.W.3d at 844; *see Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 85 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (finding that a well was an "improvement" for purposes of Chapter 95).

the completed well. 271 S.W.3d at 392. The El Paso Court of Appeals concluded that, because the drilling of the well was an integral, essential part of the well's construction, Chapter 95 applies to a person injured during the drilling process. *Id.* at 399. The court in *Painter* determined that a completed well is an improvement, and thus, the claimants "were involved in the construction of an improvement to real property." *Id.* The court in *Lopez* declined to follow *Painter* on the basis that its holding is inconsistent with the determination in *Ineos* that, in order for Chapter 95 to apply, the claimant must be working on the same improvement by which he was injured. *Lopez*, 524 S.W.3d at 844–45, n.7 (citing *Ineos*, 505 S.W.3d at 567–68).

Endeavor's briefing does not characterize the well as the improvement at issue, nor does Endeavor argue that the well and rig were part of the same improvement. But under the holding in *Lopez*, this contention by Endeavor, if asserted, would not be successful. *See* 524 S.W.3d at 844–45 (finding that a well and rig are not a part of the same improvement for purposes of Chapter 95).

We further note that the *Ineos/Abutahoun/Sonnier* definition of improvement excepts trade fixtures. The term "trade fixture" is most commonly encountered in the context of the landlord/tenant relationship and has been defined many times as follows:

> It is now well settled that, as between a landlord and his tenant, the term "trade fixtures" refers to and means such articles as may be annexed to the realty by the tenant to enable him properly or efficiently to carry on the trade, profession, or enterprise contemplated by the tenancy contract or in which he is engaged while occupying the premises, and which can be removed without material or permanent injury to the freehold.

*Boyett v. Boegner*, 746 S.W.2d 25, 27 (Tex. App.—Houston [1st Dist.] 1988, no writ) (quoting *Granberry v. Tex. Pub. Serv. Co.*, 171 S.W.2d 184, 186 (Tex. App.—

Amarillo 1943, no writ)); *see also C.W. 100 Louis Henna, Ltd. v. El Chico Rests. of Tex., L.P.*, 295 S.W.3d 748, 754–55 (Tex. App.—Austin 2009, no pet.).

This court addressed the question of whether equipment related to an oil and gas lease constitutes a trade fixture in *Brazos River Conservation & Reclamation District v. Adkisson*, 173 S.W.2d 294, 298 (Tex. App.—Eastland 1943, writ ref'd). In *Brazos River*, a conservation and reclamation district brought a condemnation action against an oil and gas leasehold estate that was held by Adkisson. 173 S.W.2d at 295. The district argued that mechanical equipment that was located on the estate was not an improvement, but was instead a set of trade fixtures that could not be included as an element of damages. *Id.* at 297. We agreed with the district's characterization of the equipment and held that "casing in wells, derricks, engines, and other machinery and appliances placed upon the land by the lessee for testing, developing and operating the land for oil and gas purposes are trade fixtures." *Id.* at 298 (quoting SUMMERS ON OIL & GAS, PERM. ED., VOL. 3, p. 214, § 526).

In *Cuevas v. Endeavor Energy Resources, L.P.*, we seemingly reached a different result than did the court in *Lopez*. *Cuevas v. Endeavor Energy Res., L.P.*, 531 S.W.3d 375 (Tex. App.—Eastland 2017), *rev'd in part*, 593 S.W.3d 307 (Tex. 2019). *Cuevas* involved a claimant that was working in the substructure area of the rig known as the cellar.[3] 531 S.W.3d at 378. The claimant suffered a fatal injury when the catline rope became caught in the cathead pulley system. *Id.* We assumed that Chapter 95 applied to the claims in *Cuevas*. However, the parties in *Cuevas* agreed that Chapter 95 applied to the plaintiffs' claims. *Id.* at 379 ("We note at the outset that the parties agree that Chapter 95 applies to Appellants' original premises

---

[3]We note that in *Vela v. Murphy Exploration & Production Company-USA*, the San Antonio Court of Appeals determined that a well is an improvement and that the cellar is a part of the well. No. 04-18-00830-CV, 2019 WL 7196603, at *3–4 (Tex. App.—San Antonio Dec. 27, 2019, no pet.) (mem. op.).

8

liability and negligence claims as alleged in Plaintiffs' Original Petition."). Accordingly, we did not analyze the question of whether a drilling rig constitutes an improvement for purposes of Chapter 95.

Suffice it to say, there is a question among the intermediate courts of appeals as to whether a drilling rig is an improvement for purposes of Chapter 95. But because the result would be the same in this case irrespective of whether Chapter 95 applies, it is not necessary for us to answer this question in this case—we will assume that Chapter 95 applies to Luna's claims.

*No-Evidence Analysis*

We now turn to the no-evidence challenges in Endeavor's motion. Endeavor contends that (1) there is no evidence that it owed a duty to Luna and (2) there is no evidence that its conduct was a proximate cause of Luna's injuries. Endeavor also asserts that Luna's affidavit, which was offered as summary judgment evidence in support of each of these issues, is inadmissible. Endeavor objected to Luna's affidavit while its motion was pending before the trial court. However, the trial court never ruled on the objections. As such, we will consider the affidavit as a part of the summary judgment record. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (even if a party objects to an opponent's summary judgment evidence, it remains a part of the summary judgment proof unless an order sustaining the objection is reduced to writing, signed, and entered of record).

With respect the issue of duty, Endeavor is liable for its acts of negligence as a property owner under Chapter 95 if it (1) exercised or retained some control over the manner in which the work was performed and (2) had actual knowledge of the danger or condition resulting in the personal injury and failed to adequately warn of it. *See Energen*, 642 S.W.3d at 514. Endeavor premises its no-duty argument on

the assertion that there is no evidence that E.J. Grillo's alleged conduct was within the course and scope of his employment as Endeavor's field superintendent.

An employer is liable for the acts of its employee if, at the time of the negligent conduct, the employee was acting in the course and scope of their employment. *Cameron Int'l Corp. v. Martinez*, No. 21-0614, 2022 WL 17998214, at \*2 (Tex. 2022); *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018) (*Painter II*); *Wheeler v. Free*, 638 S.W.3d 731, 737 (Tex. App.—Eastland 2021, pet. denied). The question of course and scope "hinges on an objective assessment of whether the employee was doing his job when he committed a tortious act." *Painter II*, 561 S.W.3d at 132; *see also Wheeler*, 638 S.W.3d at 737 (quoting *Painter II*). Where employees act "in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired," they are acting in the course and scope of their employment. *Painter II*, 561 S.W.3d at 131 (quoting *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007)).

Endeavor's interrogatory responses state that Grillo was on duty as its field superintendent at the time of the incident. Luna's affidavit likewise indicates that Grillo was an employee of Endeavor. Luna's affidavit further states that Grillo was "clearly supervising all of our work and in control of what we were doing and when and how we were each doing our work there." The affidavit then indicates that, because of the problems the crew had encountered in completing the well, Grillo was "emphasizing to all of us how quickly we needed to work . . . otherwise, we were never going to get that well drilled and completed." Luna stated in his affidavit that he was then directed two times by Grillo to use the rope in question to pull on the ears of the elevator.

We conclude that Luna's affidavit, in combination with Endeavor's interrogatory responses, raises more than a scintilla of evidence as to whether Grillo

10

was acting in the course and scope of his employment for Endeavor at the time of the incident. Specifically, the evidence demonstrates that Grillo, acting as a field superintendent for Endeavor, was attempting to further the business of Endeavor as the crew attempted to work through a problem that related to the completion of Endeavor's well. Hence, Grillo, by his conduct, exercised at least some control over the manner in which the crew was attempting to rectify this problem.

There is also summary judgment evidence that raises an issue concerning Endeavor's actual knowledge of the risk of harm that resulted in Luna's injuries.

According to Luna's affidavit, Grillo was directing the pace of work and the methods that were being utilized by the crew as they attempted to complete the well. With respect to the risk of danger, Luna's affidavit indicates the following:

- When Luna was instructed to pull on the rope, Luna indicated to Grillo that the crew should be tying "sash cord or cinch rope" to the elevator ear instead, since those types of rope would be more likely to withstand the pressure being exerted on them.

- At the direction of Grillo, Luna then pulled on the rope, causing the rope to break.

- Luna then fell back into a section of drill pipe, injuring his elbow.

- Grillo saw "that the rope had so easily broken or torn and [the] resulting injury," but instructed Luna to continue working.

- Luna then pulled on the rope a second time, which tore again, causing Luna to fall to the metal diving board and injure his left knee and back.

This summary judgment evidence likewise raises more than a scintilla of evidence that Grillo knew of a risk of harm when he instructed Luna, for a second time, to pull on the elevator ears with the rope.

For purposes of Chapter 95, Luna's affidavit is evidence of Endeavor's control over the worksite and knowledge of the risk of harm. *See* CIV. PRAC. & REM. § 95.003; *Energen*, 642 S.W.3d at 511 n.6. Chapter 95 also requires Luna to prove

that Endeavor failed to adequately warn him of the risk of harm. CIV. PRAC. & REM. § 95.003(2). We conclude that Luna's affidavit, which states that Grillo was insisting that he proceed with, rather than cease, the dangerous activity in question, was also sufficient to support this element.

Endeavor maintains that, even if it owed a duty as a premises owner, it did not owe a duty to Luna under these circumstances because Luna was already aware of the risk. In Texas, a landowner's duty to its invitees regarding a defect on the premises can be satisfied by either (1) making the defect safe or (2) warning against any condition that is concealed and unreasonably dangerous. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015). However, there is no need to warn if the invitee is already aware of the condition. *Id.* This is because "the law presumes that invitees will take reasonable measures to protect themselves against known risks." *Id.* Endeavor reasons that, since Luna admits that he was aware of the risks that came from exerting force on the rope, the premises were "reasonably safe as a matter of law and no warning was required."

In response, Luna asserts that the "necessary-use" exception applies. Under the necessary use exception, a landowner remains liable for a premises defect if an invitee "necessarily must use the unreasonably dangerous premises, and despite the invitee's awareness and appreciation of the dangers, the invitee is incapable of taking precautions that will adequately reduce the risk." *Austin*, 465 S.W.3d at 204; *see also Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978).

We first note that, under the facts presented by this appeal, Luna is not restricted to relying on the necessary use exception to establish liability on the part of Endeavor. Luna's theories of recovery are based on more than an allegation that Endeavor failed to warn him of a danger of a premises defect or to make the premises safe. To the contrary, Luna asserts that Endeavor, by and through Grillo, committed

12

acts and omissions that constituted a negligent activity. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 470–73 (Tex. 2017) (examining the differences between a negligent activity claim and a premises liability claim).

To the extent that Luna relies on the necessary use exception, the Texas Supreme Court has "expressed doubt that the necessary-use exception applies to independent contractors." *SandRidge Energy, Inc. v. Barfield*, 642 S.W.3d 560, 568 (Tex. 2022) (citing *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215–16 (Tex. 2008)). However, the facts presented here are appropriate for the necessary use exception to apply.

Taken in a light most favorable to Luna, the summary judgment evidence shows that, in the process of controlling the work that was performed by Luna, Grillo was a witness to an incident that illustrated the risk that was posed by the dangerous condition. Grillo disregarded that risk by explicitly instructing Luna to continue use of the dangerous condition in an unsafe manner. Furthermore, Luna specifically requested that he be allowed to use a stronger type of rope, and Grillo refused to allow him to do so. Under these circumstances, we cannot conclude that Luna could have taken "reasonable measures to protect himself against known risks" as the general rule presumes. *Austin*, 465 S.W.3d at 203. Therefore, we hold that, where an owner seeks to control the work of an independent contractor by expressly requiring the contractor to make use of the premises in a manner that it knows to be dangerous, the necessary use exception applies.

Finally, Endeavor asserts that Luna has failed to provide evidence that Endeavor's conduct was the proximate cause of Luna's injury. "The two elements of proximate cause are cause in fact and foreseeability." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985). Endeavor argues that there is no evidence of foreseeability because Endeavor could not have foreseen that Big Dog, its

13

independent contractor, would provide unsafe materials.  This argument ignores the affidavit of Luna that is described above, in which Luna specifically informed Grillo that the rope was unsafe.  It also ignores Luna's testimony that Grillo had seen the rope break under stress before instructing Luna to continue working.

Because Luna has raised more than a scintilla of evidence as to each of the elements that are challenged in Endeavor's no-evidence motion for summary judgment, we sustain Luna's second issue.

*This Court's Ruling*

We reverse the judgment of the trial court and remand this cause for further proceedings.


JOHN M. BAILEY
CHIEF JUSTICE


March 23, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.